**Johnny WITT, Plaintiff,**

v.

**Calvin HARBOUR et al., Defendants.**

**Civ. A. No. 79–0057(D).**

United States District Court,
W. D. Virginia,
Danville Division.

April 23, 1980.

Robert W. Mann, Martinsville, Va., for plaintiff.

Thomas T. Lawson, Roanoke, Va., Anthony Giorno, Stuart, Va., for Patrick County.

### MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff, Johnny Witt, brings this action pursuant to Title 42 U.S.C.A. § 1983, naming as defendants the County of Patrick, Virginia, the County Sheriff, Calvin Harbour, a deputy, Larry E. Baliles, and an employee, Martha Sue Fain. Plaintiff maintains that Miss Fain falsified evidence against him which led to his indictment and arrest and for this reason and because of his innocence, charges have been dropped. The

County, Sheriff Harbour, and Deputy Sheriff Baliles, have been joined as defendants on the theory that their actions in failing to supervise Miss Fain evinced reckless disregard for the rights of others in general and plaintiff in particular. The County of Patrick has moved to dismiss maintaining that it has neither the responsibility nor the right under Virginia law either to train or control the actions of the County Sheriff and his deputies. Sheriff Harbour and Deputy Baliles have moved to dismiss maintaining that the bases of plaintiff's action are claims of defamation and negligent deprivation of liberty although "[t]he former has been held an inappropriate basis for a § 1983 suit ... [1] [and] the latter is not actionable when, as here, it allegedly contributes to a grand jury indictment." Finding no violation of a constitutional right, the court will dismiss.

"The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980). When a person is sued for reckless supervision, the inquiry, of course, must begin with an examination of the conduct of the subordinate who is alleged to have violated plaintiff's constitutionally protected rights. That is, assuming that defendant Fain was the moving force in initiating criminal proceedings against plaintiff knowing him to be innocent, what constitutional guarantee, if any, did she infringe?

The Fourth Amendment was intended to protect against arbitrary arrests as well as against unreasonable searches, *Giordenello v. United States*, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 1249–1250, 2 L.Ed.2d 1503 (1958) and its proscriptions are applicable to the states through the Fourteenth Amendment. *Wolf v. Colorado*, 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949); *Pritchard v. Perry*, 508 F.2d 423, 424 (4th Cir. 1975). *See Baker v. McCollan*, *supra*, 99 S.Ct. at 2694. Consequently, violations of Fourth Amendment rights by persons acting under color of state law are redressable under § 1983. *Pritchard v. Perry*, *supra*, at 424–425. However, "it has long been settled that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant to issue." *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977) (en banc), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978). The requirements of procedural due process were met, therefore, before plaintiff was deprived of his liberty.[2] Consequently, while the facts alleged would serve as a basis for civil action for malicious prosecution [3] and for the criminal charge of

1. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

2. Plaintiff cites *Reeves v. City of Jackson*, 608 F.2d 644 (5th Cir. 1979) for the proposition that a person arrested without probable cause is denied rights under the Fourth and Fourteenth Amendments and can sue the responsible state authorities under § 1983. That is undoubtedly a correct statement of law. However, in the present case, as in *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977) (en banc), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978), referred to above, an indictment preceded plaintiff's arrest, an event which conclusively establishes probable cause.

3. In the constitutional sense, to say that the return of an indictment conclusively establishes probable cause for a warrant of arrest to issue is not to say that if the true facts were known they would establish probable cause. Rather, it is to say that plaintiff has been afforded all the protection to which he is entitled under the Constitution. Under state tort law principles, the question is not whether it would be procedurely permissible to arrest the plaintiff, but whether the one who initiated or was responsible for initiating criminal proceedings has "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense." Prosser, *The Law of Torts*, 4th Ed., § 119. *See Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 684, 152 S.E.2d 271, 275 (1967). It requires, therefore, "an honest belief in the guilt of the accused." *Id. Munger v. Cox*, 146 Va. 574, 131 S.E. 841, 844 (1926). Accordingly, one who commits perjury to obtain an indictment cannot by the return of that indictment assert that probable cause has been conclusively established; instead, the return of the indictment is merely evidence that probable cause

perjury[4] against Miss Fain, they do not establish a violation of constitutional magnitude. That is, malicious prosecution by a person acting under the color of his or her office does not, by that fact alone, rise to constitutional proportions. *Pollard v. Baskerville,* 481 F.Supp. 1157, 1160 (E.D.Va. 1979); *Curtis v. Rosso and Mastracco, Inc.,* 413 F.Supp. 804, 809 (E.D.Va.1976); *Pyles v. Keane,* 418 F.Supp. 269, 276 (S.D.N.Y. 1976); *Rosales v. Lewis,* 454 F.Supp. 956, 960 (S.D.Iowa 1978). *Contra, Voytko v. Ramada Inn of Atlantic City,* 445 F.Supp. 315 (D.N.J.1978). As the Supreme Court stated in *Baker,* "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort law prin-

ciples." *Baker v. McCollan, supra,* 99 S.Ct. at 2695–2696. As there has been no deprivation of constitutional magnitude, neither defendant Fain's superiors nor the County[5] would be liable on the theory of reckless supervision[6] under § 1983. Accordingly, defendants' motion to dismiss must be granted.

---

exists and may be impeached by evidence that it was procured through perjury. *See Restatement (Second) of Torts,* § 664(2); *The Law of Torts, supra,* § 119, p. 846; *Westreich v. McFarland,* 429 F.2d 947, 949 (4th Cir. 1970). In the present case, the facts alleged include all the elements of malicious prosecution under Virginia law. *Bill Edwards Oldsmobile, Inc. v. Carey,* 219 Va. 90, 96, 244 S.E.2d 767 (1978). Furthermore, a principal may be held liable for the act of his agent in instituting a malicious prosecution "when expressly authorized, or when his authority to act may fairly be inferred from the nature and scope of the employment." *Freezer v. Miller,* 163 Va. 180, 199, 176 S.E. 159, 166 (1934). A sheriff is liable for the acts of his deputies. *Miller v. Jones,* 9 Gratt. 584, 50 Va. 584, 602–603 (1853). If the facts alleged are proven, therefore, Sheriff Harbour would be civilly liable for the acts of Miss Fain. Deputy Baliles would also be liable if he authorized those acts.

**4.** Va.Code Ann. § 18.2–434.

**5.** The office of sheriff is an elected position created by the Virginia Constitution, Art. VII, § 4. His duties are prescribed by general law, Va. Code Ann. § 15.1–40.1 (Cum.Supp.1979), and are not subject to the control of the local political subdivision which he serves. His deputies are appointed and serve at his discretion, Va.Code Ann. 15.1–48, and like the sheriff, are not subject to the control of the governing body of the local government. Whether the sheriff is an employee of the state or the county, however, would not be dispositive of plaintiff's

claims if a constitutional violation were found. The question is not by whom is the tort-feasor employed. Rather, it is whether he is carrying out official county policy of some nature. *See Monell v. N. Y. City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Burt v. Abel,* 585 F.2d 613 (4th Cir. 1978). If a constitutional tort had been committed and if it were committed pursuant to official county policy then the county would be liable irrespective of the immunities of the tort-feasors. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The requirement that action be taken pursuant to official county policy is simply not met when a sheriff or his employees, who are not subject to the control of the local political subdivision, are functioning to enforce the general criminal laws of the state. For this additional reason, plaintiff's claims against the county are without merit.

**6.** A superior may be held liable for failing to supervise or train his subordinates if his dereliction is so severe as to reach the level of gross negligence or deliberate indifference to the deprivation of plaintiff's constitutional rights. *See Owens v. Haas,* 601 F.2d 1242 (2d Cir. 1979), *cert. denied sub nom.,* 44 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1980); *Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979). *See generally, Davis v. Zahradnick,* 600 F.2d 458 (4th Cir. 1979). No matter how reckless the supervision, however, the injury must be constitutionally significant.